UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRECK SUNDERLAND,<br><br>        Petitioner,<br><br>   v.<br><br>KATHY MENDOZA-POWERS,<br><br>        Respondent. | 1:06-CV-00999 LJO JMD HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Derreck Sunderland ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgment of the San Francisco County Superior Court. (Answer Ex. A). On October 26, 1983, Petitioner pled no contest to second degree murder (Cal. Penal Code § 187(a)) with an enhancement for the use of a knife (Cal. Penal Code § 12022.53(d)) in exchange for a sentence of sixteen years-to-life and limitations on his period of incarceration after Petitioner was released from custody. (Answer at 1; Pet. Ex. 1, RT at 33). As part of the plea agreement, Petitioner was not charged with a prior criminal offense committed in Texas.

The petition filed before this Court does not challenge Petitioner's conviction but the denial of parole by the Board of Prison Terms ("Board"). Petitioner appeared before the Board for a parole hearing on July 9, 2003. (Answer Ex. C). At that hearing, the Board found Petitioner unsuitable for parole, citing among several other factors that the manner in which the crime was committed and Petitioner's prior offense (Id. at 46-50).

1   On September 29, 2004, Petitioner filed a petition for writ of habeas corpus with the San
2   Francisco County Superior Court, challenging the denial of parole as a violation his right to due
3   process of the law. (Answer Ex. E). Specifically, Petitioner alleged that the Board's denial was not
4   supported by some evidence and that the Board's denial violated his plea agreement. The Superior
5   Court denied the petition, finding that there was some evidence to support the Board's denial of
6   parole and summarily rejecting Petitioner's claim that he had been denied the benefit of his plea
7   agreements by the Board's action. (Answer at 3).

8   Petitioner filed a subsequent petition for habeas corpus with the California Court of Appeal
9   on April 20, 2005. (Answer Ex. F). The appellate court denied the petition on April 27, 2005.

10  On September 29, 2005 Petitioner submitted the claim regarding his plea agreement in a
11  petition for habeas corpus to the California Supreme Court. (Answer Ex. G). The state's highest
12  court summarily denied the petitioner on July 19, 2006. (Id).

13  Petitioner filed this instant federal petition for habeas corpus relief on August 1, 2006. As its
14  sole ground for relief, the petition alleges that the application of the some evidence standard denied
15  Petitioner the benefits of his plea agreement and therefore violated his rights under the Fourteenth
16  Amendment.

17  On January 29, 2008, Respondent filed an answer to the petition. Petitioner replied to the
18  answer on February 29, 2008.

19                                              **DISCUSSION**

20  **I.    Jurisdiction**

21  A person in custody pursuant to the judgment of a state court may petition a district court for
22  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or
23  treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529
24  U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by
25  the U.S. Constitution. An application for writ of habeas corpus may be filed "in the district court for
26  the district wherein such person is in custody or in the district court for the district within which the
27  State court was held which convicted and sentenced [petitioner]." 28 U.S.C. § 2241(d). Petitioner is
28  currently in custody at Avenal State Prison in Kings County. As the Eastern District of California

encompasses Kings County, this court has jurisdiction over the instant action.  *See* 28 U.S.C. § 84(b).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed on August 10, 2005 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

**II.     Legal Standard of Review**

While Petitioner is not challenging the underlying state court conviction, Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition since he satisfies the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir.1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859, 123 S.Ct. 231 (2002), *rehearing denied*, 537 U.S. 1149, 123 S.Ct. 955 (2003).

**III.    Review of Petitioner's Claim**

In the sole ground for relief alleged in the petition, Petitioner contends that the Board's denial

of parole constitutes a breach of his plea agreement. Petitioner presented this claim to the San Francisco County Superior Court, which summarily denied the claim.[1] Petitioner submitted petitions for writ of habeas corpus on this ground to both the California Court of Appeal and the California Supreme Court. The petitions were summarily denied. As a result of the unexplained rejection, this Court conducts an independent review of the record to decide whether the state court's decision was objectively reasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Having done so, the Court concludes that there was no breach of the plea agreement as there was no promise that Petitioner would be found suitable for parole or paroled on a particular date.

        A criminal defendant's right to due process of the law entitles him/her to enforcement of the terms of a plea agreement. Santobello v. New York. 404 U.S. 257, 261-262 (1971). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262; *see also* United Stated v. Hallam, 472 F.2d 168, 169 (9th Cir. 1973). It is clearly established federal law that the construction and interpretation of state court plea agreements, and their resulting contractual obligations, are generally matters of state law. Buckley v. Terhune, 441 F.3d 688, 694-695 (9th Cir. 2006)(citing Ricketts v. Adamson, 483 U.S. 1, 6 n. 3 (1987)). "Plea agreements are contractual in nature and are measured by contract law standards." Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003)(quoting United States v. De La Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993)). In California, a court must first look to the plain meaning of the agreement's language. Buckley, 441 F.3d at 695 (citing Cal. Civ. Code §§ 1638, 1644). Where the language is ambiguous, the terms "must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. "The inquiry considers not the subjective belief of the promisor but, rather, the 'objectively reasonable' expectation of the promisee." Buckley, 441 F.3d at 695 (quoting Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265 (Cal. 1992)).

        Petitioner alleges multiple breaches of the plea agreements resulting from the Board's

---

[1] The Superior Court's adjudication was based in its entirety on whether some evidence existed to support the Board's denial of parole. The court noted in explaining why it did not address Petitioner's plea bargain claim noted that the order by implication disposed of this claim. Consequently, this Court treats this disposition of the plea bargain claim as a summary denial.

actions.[2] Firstly, Petitioner contends that his plea was induced by the explicit promise of a date of initial parole. (Pet. M. & A. at 13). Petitioner acknowledges that there was no exact date that was specified in the plea agreement. However, Petitioner contends that he had a reasonable expectation that the date of the initial parole would be based on the minimum term of his sentence, namely sixteen years. (Id. at 14). Petitioner also alleges that the Board's reliance on the use of a weapon to characterize the crime as especially egregious violated the explicit promise that the use of the weapon would require only one additional year of incarceration. (Id. at 15). Petitioner further contends that the promise that his confinement pursuant to a revocation of parole not exceed twelve months was violated by the Board's denial which resulted in a more lengthy period of incarceration. Lastly, Petitioner contends that the reliance on his prior offense to find him unsuitable for parole violated the explicit promise not to charge the prior offense.

The Court finds that the plain language of the plea, contained in the plea colloquy, does not support Petitioner's assertion that the District Attorney's Office explicitly promised Petitioner that he would be released on parole after a serving a certain amount of time or on a certain date. Rather, Petitioner's plea deal made him *eligible* for release after sixteen years but included a maximum term of life imprisonment. This is evidenced in the statements made by Petitioner's trial counsel during the plea colloquy. Counsel noted that in his discussion with Petitioner, counsel had "advised him of the legal consequences of a no contest plea to a 187 second degree, and that the punishment for that particular offense is 15 years *to life* in State prison." (Pet. Ex. 1, RT 32:25-28)(emphasis added). Additionally, Petitioner's trial counsel reiterated to the court that he advised Petitioner that "by admitting the weapon allegation in this case, he would receive an additional period of incarceration in the State prison of one year...*which means he would receive a total sentence of 16 years to life in State prison*." (Pet. Ex. 1, RT 33:1-5)(emphasis added)

The court's examination of the plea colloquy does not reveal an ambiguity that would lend

---

[2] In his traverse, Petitioner alleges that the Board's application of the some evidence standard requiring him to serve a lengthier period of incarceration violates his plea agreement. The Court rejects this contention as the some evidence standard is applied not by the Board in its determination of parole suitability. The some evidence standard is the applicable standard for judicial review of the Board's decision. See Sass, 461 F.3d at 1128 (citations omitted). Furthermore, the plea agreement does not contain any promise, explicit or implicit, regarding the standard of proof to be utilized by the Board in its determinations.

itself to Petitioner's interpretation that the initial parole date was to be his minimum term, thus distinguishing Petitioner's case from Buckey. In Buckley, the Ninth Circuit found an ambiguity existed as there was two contradictory terms in the plea agreement–the agreement provided that the defendant could be sentenced to a maximum possible term of fifteen years for second degree murder and then also provided that the maximum parole period was life. Here, there are no contradictory terms or terms open to the interpretation advanced by Petitioner that he would serve only his minimum sentence. Rather, the colloquy clearly reveals Petitioner had a minimum sentence of sixteen years and a maximum sentence of life. Even if there existed an ambiguity, Petitioner's subjective understanding that his term was fixed at the minimum possible sentence is an objectively unreasonable belief as it contradicts the range of his minimum and maximum sentence explicitly stated during the plea colloquy.

Contrary to Petitioner's assertion otherwise, the colloquy does not contain an explicit promise, by either the District Attorney or the Court, regarding the setting of an initial parole date. Other than the setting of a minimum term, the plea colloquy fails to address, in any manner, the setting of an initial parole date. (Pet. Ex. 1, RT 33:6-9). Unlike in Brown, where a prosecutor's concession, explicitly stated in the plea colloquy, that defendant would be released after serving half the minimum term if she had a clear disciplinary record in prison created a contractual obligation, there exists no such obligations to release Petitioner once he had served his minimum term. Eligibility for parole does not mean suitability and under state law, Petitioner must be found suitable for parole prior to the setting of a release date. Petitioner has received the parole considerations that he was entitled to under his plea agreement and sentence–namely parole determinations hearing occurring less than sixteen years after Petitioner was sentenced.

Petitioner's contentions, that the explicit promise that his confinement, pursuant to a revocation of parole, not exceed twelve months was violated by the Board's denial of parole is likewise without merit. The promise, as defined by Petitioner's counsel during the plea colloquy, was that, "*upon his release from custody* he may be placed on parole for a period of three years, and he could be retained under parole supervision or in custody for a period of four years from the date of his initial parole. However, if parole is revoked, confinement pursuant to a revocation of parole shall

1  not exceed 12 months." (Pet. Ex. 1, RT at 33:6-11)(emphasis added).  The language of Petitioner's
2  plea agreement is clear–this one year limitation regards the revocation of parole and not Petitioner's
3  incarceration prior to the grant of parole.  Consequently, the Board's denial of parole does not breach
4  that promise.

5      Petitioner's contention that the Board's reliance on his use of a knife likewise cannot
6  constitute a successful ground for habeas relief as such an interpretation misconstrues the actual
7  promise made during the plea colloquy.  Petitioner asserts that the Board's reliance on the manner in
8  which he committed the crime violated the agreement since his plea was induced by the promise that
9  the sentence enhancement would only result in a one year addition to his sentence.  In actuality, the
10 plea stated that the weapon allegation would add an additional year to his minimum sentence so that
11 his total period of custody would be sixteen years-to-life.  (Pet. Ex. 1, RT at 33:4-5). The Board's
12 reliance on Petitioner's use of a knife in the commission of the crime thus did not violate his plea as
13 it did not affect his minimum sentence.

14     Lastly, Petitioner alleges that the Board's reliance on his previous offense to deny him parole
15 constitutes a violation of the promise not to charge this prior offense.  Petitioner's assertion
16 erroneously equates the use of the previous criminal conduct to find Petitioner unsuitable for parole
17 with filing charges against Petitioner for the same conduct.  These are two distinctly different actions
18 and the Court does not believe that the plea agreement should be construed to forbid the
19 consideration of the prior offense in determining whether Petitioner is currently a danger to the
20 public safety.  This is especially true as consideration of a prior offense, whether charged or not, is
21 permissible under both the California Penal Code § 3041 and Title 15 of the California Code of
22 Regulations §2402(b) and (c)(2).  This contention is clearly without merit and thus the petition must
23 be rejected.

## RECOMMENDATION

25     Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be
26 DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for
27 Respondent.

28     This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill,

1  United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule
2  72-304 of the Local Rules of Practice for the United States District Court, Eastern District of
3  California.  Within thirty (30) days after being served with a copy, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall
6  be served and filed within ten (10) court days (plus three days if served by mail) after service of the
7  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §
8  636(b)(1)(c).  The parties are advised that failure to file objections within the specified time may
9  waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     November 17, 2008            /s/ John M. Dixon**
                                    UNITED STATES MAGISTRATE JUDGE